| iCALOGERO, Chief Justice.
In two separate proceedings below, the trial courts declared Baton Rouge Code of Ordinance, Title 13:1019, entitled “Drug Paraphernalia Prohibited”, to be preempted by state law under La. R.S. 14:143, a statute which prohibits a political subdivision from enacting an ordinance defining as an offense conduct that is defined and punishable as a felony under state law. One of the trial courts also ruled that the Baton Rouge ordinance was unconstitutional. Because we agree that the city ordinance violates La. R.S. 14:143 in that it defines and punishes as a misdemeanor the same conduct defined and punished as a felony under the state law provisions of La. R.S. 40:1031 et seq., the state statutes on “Transactions in Drug Related Objects Prohibited,” we affirm the trial courts’ rulings on the nonconstitutional ground of preemption and therefore preter-mit consideration of defendants’ constitutional arguments.[1]
FACTUAL AND PROCEDURAL BACKGROUND
Defendants Izeal Knox, Clay Alexander, Gail Gautreaux and Gordon Robinson were charged as first offenders with violations of the City of Baton Rouge Code of Ordinance, Title 13:1019, Drug Paraphernalia Prohibited.[2] Each defendant filed a motion to quash, arguing that the ordinance was “preempted” by |2La. R.S. 14:143 because the ordinance hinders and interferes with the right of the State to obtain a felony conviction under La. R.S. 40:1031 et seq. (the state statutes entitled “Transactions in Drug Related Objects Prohibited”)[3], that it was unconstitutional because it was vague and overbroad, that it was invalid because it was inconsistent with and/or in contravention of La. R.S. 40:1032, that the ordinance violated the prohibition against double jeopardy, and that its forfeiture provisions were inconsistent with state law.
On the motions to quash filed by defendants Knox and Alexander, City Court Judge Donald Johnson signed a judgment finding Title 13:1019 unconstitutional because it “is inconsistent and or in contravention with LSA-R.S.40:1031 et seq. and is therefore unconstitutional under the Louisiana Constitution of 1974”. Judge Johnson further ruled that Title 13:1019 “is preempted by LSA-R.S. 14:143”. No specific provision of the state constitution was cited by Judge Johnson as being violated by Title 13:1019.[4]
*265 lain the eases of defendants Gautreaux and Robinson, City Court Judge Suzan Ponder held that Title 13:1019 was preempted by La. R.S. 14:143, making no express ruling on the constitutionality of the ordinance. Both Judge Johnson and Judge Ponder granted the motions to quash.
The records were lodged in this court at the request of the City of Baton Rouge, presumably on direct appeal pursuant to La. Const. Art. V, Section 5(D), and the eases were consolidated. On closer examination, our appellate jurisdiction should rightfully be asserted only over the case where the city court judge made an express finding of unconstitutionality; that is, in 95-KA-2850, City of Baton Rouge versus Izeal Knox and Clay Alexander. There was no such finding of uneonstitutionality in the consolidated matter of 95-KA-3042, City of Baton Rouge versus Gail Gautreaux and Gordon Robinson, where Judge Ponder denied the motion to quash on the finding that the ordinance was preempted by state law. Contrary to the statement of Judge Johnson, preemption under La. R.S. 14:143 is not a constitutional issue, and a finding of preemption is not tantamount to a finding of unconstitutionality. City of Baton Rouge v. Goings, 95-2542 (La.12/13/96), 684 So.2d 396; City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311. However, in the interest of judicial economy, we exercise our supervisory jurisdiction over this latter matter, treating it as a writ application granted under our supervisory jurisdiction.
LAW AND ANALYSIS
The issue initially presented to us today is whether Title 13:1019, a Baton Rouge City ordinance which restricts transactions in drug paraphernalia and drug related objects, is preempted by the state statutory provisions of La. R.S. 40:1031 et seq. because the municipal ordinance defines as a misdemean- or conduct that |4may be punishable as a felony under state law, contrary to La. R.S. 14:143. While this Court exhaustively addressed the preemptive effect of La. R.S. 14:143 in Ross, this is the first time we consider the applicability of La. R.S. 14:143 to a state statute which defines a relative felony; that is, the statute proscribes conduct that may be considered a misdemeanor or a felony offense, depending upon the number of prior convictions of the same offense.
In Ross, we examined the scope of the City’s power to enact ordinances as a pre-1974 Home Rule Charter municipality. Article VI, Sec. 4 of the Louisiana Constitution of 1974 expressly contemplated the continuance of existing home rule charter governments and preserved the powers, functions and duties that were in effect at the time the new constitution was adopted. However, the 1974 Constitution also provided a limit on the power of home rule charter governments. Article VI, Sec. 9(A) provides:
(A) Limitations. No local governmental subdivision shall (lj define and provide for the punishment of a felony; or (2) except as provided by law, enact an ordinance governing private or civil relationships.
In Ross, we discussed at length the home rule charter government limits of Article VI, Sec. 9 and its jurisprudential progeny. Justice Tate in State v. Suire, 319 So.2d 347 (La.1975) and Justice Dennis in State v. Foy, 401 So.2d 948 (La.1981) called for the legislature to clarify the issue of concurrent state and local police regulation under the 1974 constitution and the conflict between the home rule charter , government’s powers enumerated in Article VI, Sec. 4 and its limita *266 tions listed in Article VI, Sec. 9. Ross, p. 7-8, 654 So.2d at 1317.
In response, presumably, in 1983 the legislature enacted La. R.S. 14:143 which provides:
No governing authority of a political subdivision shall enact an ordinance defining as an offense conduct that is defined and punishable as a felony under state law.
|sWe concluded in Ross that La. R.S. 14:143 did not unconstitutionally infringe upon the powers of a pre-1974 home rule charter governing authority, but rather was a constitutional exercise of the legislature’s police power. However, we limited our blessing of La. R.S. 14:143 as a constitutional exercise of legislative authority only if narrowly construed, “since an expansive reading of the preemptive scope of the statute might ‘impermissibly infringe upon the local affairs of a home rule government’ [cites omitted].” Ross, p. 14, 654 So.2d at 1320.
In accordance with this narrow construction, we directed that the preemptive effect of La. R.S. 14:143 is limited to a facial comparison of the municipal ordinance and the comparable state felony statutes to determine whether the municipal ordinance is sufficiently similar to the state felony statute so as to constitute the “same offense” for double jeopardy purposes.[5] If the ordinance presents a substantial risk that a prosecution under it will place a defendant in jeopardy so as to bar a subsequent state felony prosecution, the ordinance must fail because it places an impermissible constraint upon a state prosecutor’s prerogative and constitutional authority to pursue felony prosecutions.
We concluded in Ross that a trial court should, when faced with a challenge to a municipal ordinance on the ground that it violates La. R.S. 14:143, apply the “same elements” test of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under this test, after the statutory elements are compared, “if each statute requires proof of an additional fact which the other doesjenot”, then those statutes do not define the “same offense” for double jeopardy purposes.
So, to proceed under a Ross analysis, we must determine (1) whether the state statute concerns a felony offense, and (2) whether the municipal ordinance proscribes the “same offense” as does the state felony statute for purposes of double jeopardy.
Turning to the first branch of the test, we must examine whether La. R.S. 40:1031 et seq. concerns a felony offense. A felony is defined in La. R.S. 14:2(4) as “any crime for which an offender may be sentenced to death or imprisonment at hard labor.” La. R.S. 40:1035 delineates the penalties for engaging in the prohibited conduct. On the first offense, defendant shall be sentenced to a fine not in excess of $500 or imprisonment of not more than six months, or both. On the second offense, the defendant shall be sentenced to a fine of not more than $1000, or imprisoned for not more than one year, or both. On the third conviction, the defendant shall be fined not more than $5000, or imprisoned, with or without hard labor, for not more than five years. It is clear, then, that a defendant convicted of a third offense of the state statute has committed a felony.
The City argues that its ordinance does not apply to conduct that is defined as a felony under state law because the ordinance applies to first and second offenses only— both of which are also defined and punishable under state law as misdemeanor offenses. As the City does not prosecute “third offenses”, it contends that it does not govern conduct that has been defined as a felony under state law. Further, “because a first offense is clearly a misdemeanor, the City has not imperilled the State’s interest in any *267 way nor has it prevented the State from inflicting upon a defendant the punishment that it may deem appropriate.” City’s brief, p. 7, 95-KA-2850.
17This argument is without merit. La. R.S. 14:143 clearly prohibits a municipality from enacting an ordinance defining as an offense conduct that is defined and punishable as a felony under state law. The conduct that the municipality seeks to prohibit — transactions in drug related objects and paraphernalia — is exactly the conduct proscribed by the state. This conduct is in fact defined and punishable as a felony under state law. Conduct that is considered a misdemeanor under the municipal ordinance could very well be considered a felony under state law. Only the number of prior convictions distinguishes between whether the conduct would be considered a misdemeanor or a felony; however, the conduct remains the same. And it is this identity of conduct which impermissibly infringes on the state’s right to define and punish felonies under state law.
This unresolvable conflict between the state’s right to define and punish felonies and the municipality’s rights under its home rule charter becomes obvious when the following scenarios are considered. In the first scenario, defendant is convicted under the municipal ordinance for his first two offenses. On the defendant’s third offense, he is charged under the state statute. However, even though he is a “third offender” who should accordingly be exposed to a felony penalty, he can only be charged with a first offense misdemeanor because his first two convictions arose under the municipal ordinance. In the second scenario, defendant is first charged and convicted under the state statute. For his second offense, he is charged as a “first offender” under the municipal ordinance. When he continues to engage in the prohibited conduct and is charged under the state statute, again the efforts of the state prosecutor are thwarted in that the defendant cannot be charged with a felony as a third offender.
In a third scenario, and perhaps the most egregious demonstration of how |8the ordinance interferes with the state scheme, defendant has two prior convictions under the state statute, but on his third offense, he is charged under the municipal ordinance. Even though upon his third offense he has committed a felony according to the state statute, he can only be charged as a first offender under the ordinance, and once so convicted, he cannot be charged as a third offender under the state statute because of double jeopardy. Because of the existence of these possibilities, which in this day and age are more certain to be a reality, the municipality has in fact defined as an offense conduct that is defined as a felony under state law in obvious violation of La. R.S. 14:143, impermissibly infringing upon .the prerogative of the state.
We now proceed to the second step of the Ross analysis and apply the Blockburger test to the elements of Title 13:1019 and La. R.S. 40:1031 et seq. to determine whether Title 13:1019 is sufficiently similar to La. R.S. 40:1031 et seq. so as to constitute the “same offense” for double jeopardy purposes. There is no dispute over whether the city ordinance and the state statute prohibit the same conduct, presumably because this is evident from a comparison of the ordinance and the statute.[6]
A comparison of the two statutes reveals that Title 13:1019 essentially mirrors La. R.S. 40:1033 and its required elements of proof. A prosecution under lathe Baton Rouge ordinance would bar a state prosecu *268 tion for the same offense of distribution or use of drug paraphernalia under double jeopardy principles, and would also prevent a felony prosecution under the state statute for a subsequent or third offense. The municipal ordinance interferes with the statutory obligations of state prosecutors and thwarts their opportunity to charge a defendant whose conduct qualifies for felony prosecution as a third offender. This infringement upon the powers of the State impermissibly imperils the State’s interest, as we explained in Ross:
In this case the State’s interest is one of constitutional import, since the Louisiana constitution of 1974 expressly accords to the legislature, and not to local governments, the exclusive right to define felonies and to the district attorneys the exclusive right to prosecute them. See La. Const. Art. VI, § 9(A)(1); Art. V, § 26(B)_ When a municipality defines as a misdemeanor an offense that the legislature has designated a felony, and places a defendant in “jeopardy” for committing that offense so that the State cannot later retry the defendant, the municipality effectively prevents the State from inflicting upon the defendant the punishment the Legislature had decided is appropriate for the severity of that defendant’s conduct, [fn omitted]. While such a substitution of judgment may be quite proper in matters of local concern, criminal justice is a field which is perhaps uniquely a matter of statewide, and not local, concern, [cites omitted].
Ross, p. 12-13, 654 So.2d at 1319-1320, emphasis added.
We therefore conclude that under the Ross analysis, Title 13:1019 is preempted by La. R.S. 40:1031 et seq. under the dictates of La. R.S. 14:143. Our conclusion that the legislature intended this preemptive effect of La. R.S. 40:1031 et seq. is supported by the fact that the legislature did not choose to include any provisions in the state statutes which would allow convictions under the municipal ordinance to be considered in state prosecutions. In contrast, La. R.S. 13:1894.1 makes it clear that any conviction for a first or second offense of a municipal ordinance shall constitute a conviction under DWT statute RS 14:98 for the purpose of determining the number of prior convictions in a proceeding under hpRS 14:98[7]. By adopting La. R.S. 13:1894.1, the legislature made clear that there is no state preemption of local DWI ordinances as the legislature has expressly devised a procedure which allows state and local law to coexist without conflict.
Such is not the case at bar. A defendant with several prior convictions under the subject city ordinance could still only be charged with a first offense under the state statute, even if the prior conduct if charged under the state statute would have elevated the same current conduct to felony status. Certainly, this result was neither envisioned nor desired by the legislature which made it very clear that it was the exclusive province of the state to define felonies. Further, as demonstrated in La. R.S. 13:1894.1, the legislature is well aware how to avoid or resolve conflicts between municipal ordinances and state statutes.
CONCLUSION
We hold today that Baton Rouge Code of Ordinance Title 13:1019, which prohibits drug paraphernalia transactions, is preempted by La. R.S. 40:1031 et seq., which also prohibits drug paraphernalia transactions, under La. R.S. 14:143 in that it defines and punishes as a misdemeanor the same conduct as does the state felony offense concerning drug paraphernalia. It is irrelevant that La. R.S. 40:1035 provides for both misdemeanor penalties and felony penalties, depending upon the number of prior convictions, or that the municipal ordinance only provides for misdemeanor penalties. The fact remains that the identical conduct prohibited by the municipal ordinance can give rise to a felony conviction under the state statute. Because third offenders under La. R.S. 40:1031 et seq. are subject to punishment at hard labor and because Title 13:1019 infringes upon the *269 1 nprerogative of the state in that a municipal conviction bars a state conviction for the same offense, and also prevents the state from charging a prior offender with a felony if the prior offense arose under the municipal ordinance, we conclude that Baton Rouge Code of Ordinance Title 13:1019 is preempted and is thus invalid. Accordingly, we affirm the judgments of the trial courts below in holding that Baton Rouge Code of Ordinance Title 13:1019 is preempted by state law and is therefore invalid. Since we affirm the courts below on the preemption issue, there is no need to review the trial court’s finding of uneonstitutionality, and defendants’ constitutional challenges to Title 13:1019 are pre-termitted.
AFFIRMED.
VICTORY, J. not on panel. Rule IV, Part 2, § 3. Judge Graydon K. Kitchens, Jr., 26th Judicial District Court, and Judge Ian W. Claiborne, 18th Judicial District Court, participating as justices ad hoc in place of Justice Jack C. Watson and Justice E. Joseph Bleich who were justices at the time of oral argument in this matter.
JOHNSON, J., dissents and assigns reasons.
hzAPPENDIX
Baton Rouge City Ordinance Title 13:1019 provides:
(a) The term “drug paraphernalia” means all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act (meaning the Controlled Substances Act of this state, as scheduled in R.S. 40:964). It includes, but is not limited to:
(1)Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;
(2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances;
(3) Isomerization devices used, intended for use or designed for use in increasing the potency of any species of plant which is a controlled substance;
(4) Testing equipment used, intended for use or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances;
(5) Diluents and adulterants, such as quinine, hydrochloride, mannitol, man-nite, dextrose and lactose, used, intended for use or designed for use in cutting controlled substances;
(6) Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;
(7) Blenders, bowls, containers, spoons and mixing devices used, intended for use or designed for use in compounding controlled substances;
(8) Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances;
(9) Containers and other objects used, intended for use or designed for use in storing or concealing controlled substances;
(10) Hypodermic syringes, needles and other objects used, intended for use or designed for use in parenthetically injecting controlled substances into the human body;
(11) Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body, such as:
a. Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or *270 without screens, permanent screens, hashish heads or punctured metal bowls;
b. Water pipes;
c. Carburetion tubes and devices;
d. Smoking and carburetion masks;
e. Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;
f. Miniature cocaine spoons and cocaine vials;
g. Chamber pipes;
h. Carburetor pipes;
i. Electric pipes;
j. Air-driven pipes;
k. Chilams;
l. Bongs;
m. Ice pipes or chillers.
(b)In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors, the following:
113(1) Statements by an owner or by anyone in control of the object concerning its use;
(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;
(3) The proximity of the object, in time and space, to a direct violation of this Act;
(4) The proximity of the object to controlled substances;
(5) The existence of any residue of controlled substances on the object;
(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of the Act shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;
(7) Instructions, oral or written, provided with the object concerning its use;
(8) Descriptive materials accompanying the object which explain or depict its use;
(9) National and local advertising concerning its use;
(10) The manner in which the object is displayed for sale;
(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;
(12) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;
(13) The existence and scope or legitimate use for the object in the community-
(14) Expert testimony concerning its use.
(c) It shall be unlawful for any person, knowing the drug-related nature of the object, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person any drug paraphernalia.
(d) It shall be unlawful for any person, knowing the drug-related nature of the object, to display for sale, or possess with the intent to distribute, any drug paraphernalia.
(e) It is unlawful for any person to use or to possess with intent to use any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this section.
(f) “Knowing” as used herein means either actual or constructive knowledge of the drug-related nature of the object, and a person has constructive knowledge of the object if he has knowledge of facts which would put a reasonable and prudent person on notice of the drug-related nature of the object.
*271 (g) Anything to the contrary herein notwithstanding, the provisions of this section shall not apply to the manufacture, sale, distribution or advertisement of any product or object designed and sold primarily for scientific research, industrial, veterinary or agricultural purposes, or for bona fide medical or clinical use.
(h) It shall be an affirmative defense that the person to whom the drug-related object or advertisement or notice was distributed had a prescription from a licensed medical practitioner or psychiatrist for marijuana or the controlled substance for which the object is primarily intended to be used. It is also an affirmative defense that the drug related object was designed or marketed as useful primarily for veterinary or agricultural purposes.
1 i<t(i) The first violation of, or failure to comply with, any provision of this Part shall subject the offender to a fine not in excess of five hundred dollars ($500.00) and/or imprisonment of not more than six (6) months in jail.
(j) A second conviction of any violation or failure to comply with this section shall be subject to punishment in the same manner. And, in addition, such second violation by any person licensed under this Code or by such person’s manager, agent, servant, or employee shall cause such person to forfeit the right to any permit issued thereunder; and such permit may be suspended or revoked.
(k) All instruments, devices, and objects which are hereafter seized on condemnation as being distributed or possessed in violation of this section, may be destroyed by the city-parish only after compliance with the following procedure. Within ninety (90) days after seizures made under this section, which seizures are made on condemnation, the district attorney or city prosecutor shall institute condemnation proceedings in district or city court by petition, a copy of which shall be served upon the owner of the seized items, if known, and if the owner is unknown, notice of the proceedings shall be published once a week for two (2) weeks in the newspaper in which the sheriff’s advertisements are published. The petition shall allege that the seized items were distributed or possessed in violation of this section. Fifteen (15) days after the filing of the petition, judgment by default shall be entered by the court chambers, and the court shall order the seized items to be destroyed; otherwise, the case shall proceed as other civil cases in the court. Should the prosecution proves, by a preponderance of the evidence, that the seized items were distributed or possessed in violation of the law, the court shall order the seized items to be destroyed.
La. R.S. 1031 et seq., entitled “Transactions in Drug Related Objects Prohibited”, provides:
40:1031. Definitions
A. As used in this Part, unless the context clearly otherwise indicates, the term “drug paraphernalia” shall mean and include, but not be limited to:
(1) All equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introduced into the human body a controlled substance in violation of the Uniform Controlled Dangerous Substances Law, as scheduled in R.S. 40:964.
(2) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived.
(3) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances.
(4) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance.
(5) Testing equipment used, intended for use, or designed for use in identifying, or
*272 in analyzing the strength, effectiveness, or purity of controlled substances.
(6) Diluents and adulterants, such as quinine, hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting controlled substances.
(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana.
(8) Blenders, bowls, containers, spoons, and mixing devices used, intended for use, or designed for use in compounding controlled substances.
(9) Capsules, balloons, envelopes, and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances.
(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances.
115(H) Hypodermic syringes, needles, and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body. (12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:
(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.
(b) Water pipes.
(c) Carburetion tubes and devices.
(d) Smoking and carburetion masks.
(e) Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand.
(f) Miniature cocaine spoons, and cocaine vials.
(g) Chamber pipes.
(h) Carburetor pipes.
(i) Electric pipes.
(j)Air-driven pipes.
(k) Chillums.
(l) Bongs.
(m) Ice pipes or chillers.
40:1032. Determination of drug paraphernalia
In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other legally relevant factors, the following:
(1) Statements by an owner or by anyone in control of the object concerning its use.
(2) The proximity of the object, in time and space, to a direct violation of the Uniform Controlled Dangerous Substances Law.
(3) The proximity of the object to controlled substances.
(4) The existence of any residue of controlled substances on the object.
(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows or should reasonably know intend to use the object to facilitate a violation of the Uniform Controlled Dangerous Substances Law; the innocence of an owner, or of anyone in control of the object, as to a direct violation of the Uniform Controlled Dangerous Substances Law shall not prevent a finding that the object is intended for use or designed for use as drug paraphernalia.
(6) Instructions, oral or written provided with the project concerning its use.
(7) Descriptive materials accompanying the object which explain or depict its use.
(8) National and local advertising concerning its use.
(9) The manner in which the object is displayed for sale.
(10) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise.
(11) The existence and scope of legitimate use for the object in the community.
(12) Expert testimony concerning its use.
40:1033. Prohibited acts
A. It is unlawful for any person or corporation, knowing, or under circumstances where one reasonably should know to sell,
*273 lend, rent, lease, give, exchange, or otherwise distribute to any person any drug paraphernalia.
B. It is unlawful for any person or corporation, knowing, or under circumstances where one reasonably should know to display for sale or possess with the intent to distribute, any drug paraphernalia.
C. It is unlawful for any person to use, or to possess with intent to use, any drug paraphernalia, to plant, propagate, cultivate, grow, | ifiharvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Part.
D. [Repealed by Acts 1990 RS, No. 517, Section 2.]
40:1033.1. Prohibited acts; unmarried persons under seventeen years of age
A. It is unlawful for any person, corporation, or association to sell, lend, rent, lease, give, exchange, exhibit, display, or distribute to any unmarried person under the age of seventeen any drug paraphernalia.
B. The unlawful sale, loan, rent, lease, gift, exchange, exhibition, display, or distribution of drug paraphernalia to any unmarried person under the age of seventeen is the intentional sale, loan, rent, lease, gift, exchange, exhibition, display, or distribution of drug paraphernalia to any unmarried person under the age of seventeen years, at any newsstand, record store, tape store or any other commercial establishment which is open to persons under the age of seventeen years.
C. It shall be unlawful to invite or permit any unmarried person under the age of seventeen to be in any commercial establishment that exhibits or displays any item, material, work, or object of any kind that is defined as drug paraphernalia pursuant to this Part.
D. Lack of knowledge of age or marital status shall not constitute a defense, unless the defendant shows that he had reasonable cause to believe that the minor involved was either married or seventeen years of age or more and that the minor exhibited to the defendant a draft card, driver’s license, birth certificate, or other official or apparently official document purporting to establish that such person was either married or seventeen years of age or more.
40:1034. Exceptions; defenses
A. Any provision of law to the contrary herein notwithstanding, the provisions of this Part shall not apply to the manufacture, sale, distribution, or advertisement of any product or object designed and sold primarily for scientific research, industrial, veterinary, or agricultural purposes, or for bona fide medical or clinical use.
B. It shall be an affirmative defense that the person to whom the drug related object or advertisement or notice was distributed had a prescription from a licensed medical practitioner or psychiatrist for marijuana or the controlled substance for which the object is primarily intended to be used.
It is also an affirmative defense that the drug related object was designed or marketed as useful primarily for veterinary or agricultural purposes.
40:1035. Penalties
A. The first violation of or failure to comply with any provision of this Part shall subject the offender to a fine not in excess of five hundred dollars, or imprisonment of not more than six months, or both.
B. On second conviction, the offender shall be fined not more than one thousand dollars, or imprisoned for not more than one year, or both.
C. On third conviction, the offender shall be fined not more than five thousand dollar, or imprisoned, with or without hard labor, for not more than five years.
D. If the second or subsequent conviction is by any person licensed under the occupational license tax law, as provided in R.S. 47:341, et seq., or by such person’s manager, agent, servant, or employee, then such person shall forfeit the right to any permit issued thereunder and such permit may be suspended or revoked.
*274 40:1036. Contraband; condemnation proceedings
All instruments, devices, and objects which are seized after the effective date of this Section, on condemnation as being distributed or possessed in violation of this Part, may be destroyed by the authorities making the seizure, but only after compliance with the following procedure. Within ninety days after any seizure is made after the effective date of this Section, the district attorney shall institute condemnation proceedings in district court by petition, a copy of which shall be served upon the owner of the seized items, if known. If the owner is unknown, notice of the proceedings shall be published once a week for two weeks in the official journal of the parish. The petition shall allege that the seized items |i7were distributed or possessed in violation of this Part. Fifteen days after the filing of the petition, judgment by default shall be entered by the court, and the court shall order the seized items to be destroyed. Otherwise, the case shall proceed as other civil cases in said court. If the prosecution proves, by a preponderance of the evidence, that the seized items were distributed or possessed in violation of the law, the court shall order the seized items to be destroyed.

. As explained below, the basis of the trial court's finding of unconstitutionality is unclear, and perhaps may be the result of misinterpreting the doctrine of "preemption" as a constitutional doctrine. In all events, we find no need to address the constitutional issues herein.

. See Appendix for provisions of Title 13:1019.

. See Appendix for provisions of R.S. 40:1031 et seq.

.In his oral reasons for judgment, Judge Johnson initially concluded that while the City’s definition of drug paraphernalia differed somewhat from the State's definition, "taken as a whole, the conduct which is defined as offensive under the city ordinance and criminal under the state ordinance — statute, substantially is the same.” Judge Johnson then highlighted dissimilarities in the ordinance and statute with respect to definition and punishment. He concluded that the *265 ordinance was preempted by the state statute because the conduct regulated by the ordinance can be punishable as a felony by the state depending upon the history of the defendant, and if the defendants were prosecuted under the ordinance, jeopardy would attach, thus precluding the state from prosecuting them as felony offenses. Judge Johnson also determined that the ordinance was invalid because it was "inconsistent with and in contravention with Title 40:1031". No specific provision of the constitution is cited in support of this finding of unconstitutionality. However, upon a question from counsel. Judge Johnson responded that he was declaring the ordinance unconstitutional because "the preemption article relates to the constitutional mandate of the proscription regarding felony conduct which is found in the constitutional provision of the Constitution of '74. The Court declares that the Constitution of Louisiana does not permit the City of Baton Rouge to define and punish this conduct.”

. Ross instructs that the ordinance should be examined on its face, as written, rather than on a case-by-case basis based upon particular facts. Under these guidelines, it is irrelevant to our analysis today that defendants herein have only been charged as first offenders under the municipal statute (and thus would be exposed only to misdemeanor penalties under either the ordinance or the state statute). We examine the ordinance on its face to determine if under any circumstances, the ordinance defines as an offense conduct that is defined and punishable as a felony under the state statute.

. The municipality makes it unlawful for any person "knowing the drug-related nature of the object, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person any drug paraphernalia.” Title 13:1019(c). R.S. 40:1033 makes it illegal for any person "knowing, or under circumstances where one reasonably should know to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person any drug paraphernalia". While it may first appear that municipal ordinance requires actual knowledge (whereas the state statute applies to constructive knowledge as well), the definition of "knowing” in the ordinance includes actual or constructive knowledge. Similarly, both the ordinance and the state statute make it illegal to display for sale, or possess with the intent to distribute, any drug paraphernalia as well as to grow, prepare, ingest, inhale "or otherwise introduce into the human body” a controlled substance.

. In State v. Duncan, 219 La. 1030, 55 So.2d 234 (1951), this CourL held that municipal DWI convictions did not constitute prior convictions for purposes of R.S. 14:98. R.S. 13:1894.1 was clearly a response by the legislature to Duncan.