726 So.2d 987 (1998)
STATE of Louisiana
v.
Roy BRIDGEWATER.
No. 98-KA-658.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1998.
*988 Bruce G. Whittaker, Gretna, for Appellant.
Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Terry M. Boudreaux, Donald Rowan, Assistant District Attorneys, Gretna, for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, Roy Bridgewater, appeals from his conviction of two counts of armed robbery and one count of aggravated burglary. We affirm and remand.
On December 6, 1996, defendant and Lawrence Jacobs (Jacobs), were indicted by the Jefferson Parish Grand Jury on two counts of armed robbery, in violation of La.R.S. 14:64, and one count of aggravated burglary, in violation of La.R.S. 14:60(1) and (3).[1] On December 13, 1996, defendant was arraigned and pled not guilty to each count.
On August 19, 1997, defendant orally moved to reserve his right to file a motion to quash the indictment, which the trial court granted.[2] On August 22, 1997, defendant *989 filed a Motion to Quash the indictment on the ground that prosecution of the two counts of armed robbery and the single count of aggravated burglary violated the prohibition against double jeopardy. Following a hearing that was held on the same date, the trial judge denied the motion without stating his reasons. The defense objected to the trial court's ruling.
A jury trial was held on August 25 and 26, 1997. At the conclusion of the trial, the twelve member jury found defendant guilty as charged. On August 27, 1997, defendant filed motions for a new trial and post-judgment verdict of acquittal. Both motions were denied on October 3, 1997 and the defense objected to the ruling. On November 14, 1997, defendant was sentenced to 30 years imprisonment at hard labor on each count, to run concurrently. The trial judge specified that the two sentences for the two armed robbery convictions were to be served without benefit of parole, probation or suspension of sentence.

FACTS
The victims, Ghebreab Ghebreziabher (Mr. Ghebreziabher) and his wife, Aseghede Berhande (Mrs. Ghebreziabher), testified that at approximately 12:40 a.m. on October 25, 1996, Mr. Ghebreziabher was outside his home at 2908 Cardinal Drive in Marrero, Louisiana working on his car, which was parked in his driveway. Mrs. Ghebreziabher was standing nearby. Mr. Ghebreziabher stated that the defendant and another man approached him from behind, pointed their guns at him and ordered him to "[g]ive it up." Mr. Ghebreziabher handed the two men $132 which he had in his pocket, and pleaded with the men to take the money and to leave. However, the defendant told them to go inside their house. Mr. Ghebreziabher attempted to take the gun away from the defendant's companion, but the defendant told Mr. Ghebreziabher to let go of the gun. Mr. Ghebreziabher described the gun that defendant's companion carried as a "big gun." Mr. Ghebreziabher later described the gun as approximately one foot in length, but because he did not know what a shotgun looked like, he could not definitively state whether or not the gun was a shotgun.[3] According to Mr. Ghebreziabher the defendant told him that "[i]f you talk, if you got anything we'll blow your head."
On instructions of the perpetrators, they all went into the house. Once inside, the victims went into their living room, which was lit by a light bulb hanging from a ceiling fan. Both perpetrators could be seen clearly in the light. According to Mr. Ghebreziabher, as defendant's companion held his wife at gunpoint just two feet away, defendant told Mr. Ghebreziabher to "[g]ive it up ... [e]verything you got, give us." Mr. Ghebreziabher gave defendant his beeper and his watch. When defendant told Mr. Ghebreziabher to give him his wedding ring, Mr. Ghebreziabher tried to take his ring off, but he had trouble doing so. Mr. Ghebreziabher testified that defendant told him "[o]h, cut it from a(sic) hand, or I'll blow you. Take it off."[4] The two men then ordered Mrs. Ghebreziabher to give them all of her jewelry, so she gave them her bracelet. Mrs. Ghebreziabher pleaded with the men to let her keep her wedding ring, but defendant's companion told her to "[s]hut up, bitch," and hit her with his gun. Afterward, defendant ordered the victims into the master bedroom. As the group passed the kitchen, defendant grabbed the telephone and threw it away. When they reached the bedroom, defendant told the victims to lie down on the bed, while the two men searched through their belongings. Finally, defendant searched Mrs. Ghebreziabher's purse. When he found $300, he asked Mr. Ghebreziabher "[y]ou tell me you don't have it, what is this? ... What is this? Is this no money?"[5]
Mr. Ghebreziabher testified that defendant pointed a gun at him and that he thought that defendant was going to kill him because defendant told him "[y]ou die. No chance." Eventually, the two men asked the victims for the keys to their car. When defendant's companion was unable to find the car keys, he suggested to defendant that they kill the *990 victims. Mr. Ghebreziabher told the defendant's companion where to find the keys and they left the premises.[6]
A few days after the incident, Mr. Ghebreziabher was reading his newspaper and recognized pictures of the two perpetrators. He went to the police station and identified the photographs in the newspaper as the defendant and his companion. During the trial, Mr. Ghebreziabher again identified defendant as one of the robbers. When questioned, Mr. Ghebreziabher could not remember whether the two men wore gloves during the episode.
Mrs. Ghebreziabher also testified, corroborating her husband's testimony. However, she was unsure regarding the perpetrator's height and explained that she was not very good at judging a person's height. The defense presented the testimony of Officer Grey Thurman, of the Jefferson Parish Sheriff's Office. He testified that when Mr. Ghebreziabher arrived at the police station, he was carrying a newspaper clipping containing photographs of the defendant and Lawrence Jacobs. According to the officer, Mr. Ghebreziabher told him that the two men portrayed in the newspaper clipping were the two men that committed the crimes against him and his wife on October 25, 1996. Officer Thurman asked Mr. Ghebreziabher to sign and date the photographs contained in the newspaper clipping.
Thereafter, the officer showed Mr. Ghebreziabher two photographic lineups, each including photographs of six different individuals. One group of photographs included a picture of defendant and the other group included a picture of Lawrence Jacobs. Mr. Ghebreziabher positively identified both men as the perpetrators of the October 25, 1996 crimes. Officer Thurman admitted that he did not request Mr. Ghebreziabher to sign and date the photographs which he selected from the photographic lineup. The officer explained that he did not see a need to obtain Mr. Ghebreziabher's signature on the photographs that he selected from the photographic lineup because the victim had already identified, signed and dated the newspaper clipping that he had brought with him to the police station. Officer Thurman noted that Mrs. Ghebreziabher, who was also shown the photographic lineups, tentatively identified both men's pictures as the perpetrators. The officer did not have her sign and date the photographs because she was unable to make positive identifications.
Officer Thurman confirmed that Mr. Ghebreziabher had trouble estimating the officers' height. The officer admitted that although he was six feet tall, Mr. Ghebreziabher estimated his height to be six feet, eight inches. The officer also admitted that this called into question the victim's ability to determine a person's height.
Deputy Thelma Hill, of the Jefferson Parish Sheriff's Office, testified that she prepared the official report with respect to the crimes committed at the victims' home on October 25, 1996. She explained that the victims provided her with descriptions of the two perpetrators. The victims told her that one of the perpetrators was five feet, three inches tall, and that he wore a dark colored shirt and green pants. The victims described the other perpetrator as being five feet, seven inches tall, and they claimed that he was wearing reading glasses, a black knit cap, light colored pants and a long-sleeved, light colored shirt.
Officer Daniel O'Neil, of the Jefferson Parish Sheriff's Office, previously investigated Lawrence Jacobs. He identified Lawrence Jacobs as being six feet, three inches tall.
Daniel Duffourc, one of the crime scene technicians who investigated the home of the victims, testified that there were no fingerprints found at the scene of the crime.
Defendant's girlfriend, Kimberly Grant (Grant), also testified on his behalf. During October of 1996, Grant resided in Gretna, Louisiana with her mother and defendant. She testified that during the last two weeks of October of 1996, defendant did not leave the house between the hours of 12:00 a.m. and 1:00 a.m. However, Grant could not testify regarding the defendant's precise activities on October 25, 1996.
*991 Finally, the defense called Mr. Ghebreziabher, who admitted that he served one year imprisonment in the federal penitentiary for selling counterfeit fashions out of his clothing store. Mr. Ghebreziabher could not recall the descriptions of the perpetrators that he gave the police. However, he again testified that he definitely remembered the defendant's face.
On appeal, defendant asserts that the trial court erred in denying his motion to quash and that the trial judge erred in excluding evidence in support of his defense. He also assigns patent error.
Defendant asserts that the trial court erred in denying his motion to quash because the indictment violated the constitutional prohibition against double jeopardy when it subjected him to multiple punishments for the same offense. Although the defendant concedes that the crimes of armed robbery and aggravated burglary do not require proof of the same elements, he maintains that he was subjected to double jeopardy because the evidence necessary for an aggravated burglary conviction is the same evidence necessary for the armed robbery convictions.
The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. La.C.Cr.P. art. 591 provides:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
"Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act." State v. Jackson, 96-661 (La.App. 5th Cir.4/9/97), 694 So.2d 440, 448, writ denied, 97-1050 (La.10/13/97), 703 So.2d 609, writ denied, 97-1255 (La.10/13/97), 703 So.2d 612. "However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy." State v. Washington, 95-771, p. 8 (La.App. 5th Cir.2/14/96), 670 So.2d 1255, 1260. "Louisiana has not adopted a `same transaction' test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed during one sequential, continuing course of conduct." Id.
In Jackson, 694 So.2d at 448, this Court explained the two tests used by the Louisiana courts when examining double jeopardy violations as follows:
The "distinct fact" test, commonly referred to as the Blockburger test, is taken from the United States Supreme Court's holding in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In State v. Knowles, 392 So.2d 651, 654 (La.1980), the Louisiana Supreme Court outlined the Blockburger criteria for examining violations of double jeopardy:
... the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...
The second test is the "same evidence" test. In State v. Steele, 387 So.2d 1175 (La.1980), the Louisiana Supreme Court explained that test as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The "same evidence" test is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
Although the Louisiana Supreme Court has accepted both the Blockburger test and *992 the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).[7]
In the present case, the state prosecuted defendant for the armed robbery of Mr. Ghebreziabher (count one of the indictment) and the armed robbery of Mrs. Ghebreziabher (count two of the indictment). La.R.S. 14:64 defines the crime of armed robbery as follows:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Defendant was also prosecuted for the aggravated burglary of the home of Mr. and Mrs. Ghebreziabher (count three of the indictment), pursuant to La.R.S. 14:60(1) and (3). La.R.S. 14:60(1) and (3) provide as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
. . . . .
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
In State v. Cureaux, 467 So.2d 1377, 1379-1380 (La.App. 5th Cir.1985), defendants were charged with aggravated burglary and armed robbery. One of the defendants knocked on the door to the victims' home and asked if she could use the telephone. When the victims opened the door to allow her to enter their home, defendants burst through the door. Defendants were armed with guns. After committing batteries upon the victims, defendants stole various items from the house. On appeal, defendants claimed that a joint trial for the crimes of aggravated burglary and armed robbery subjected them to double jeopardy. A panel of this court held that, although the crimes arose from the same criminal incident, prosecution for both aggravated burglary and armed robbery did not violate the bar against double jeopardy because the two crimes encompass different elements. Id. We explained that the crime of aggravated burglary was completed upon the defendants' entry into the victims' residence, while the victims were present, with the specific intent to commit theft while armed with the guns, or when they committed battery upon the victims. Id. Further the armed robbery did not occur until the defendants actually took the victims' belongings while holding the victims at gunpoint. Id. The opinion does not specifically state which test the court relied upon in reaching the decision.
The First Circuit has determined that under both the Blockburger test and the "same evidence" test, convictions for the crimes of aggravated burglary and armed robbery do not violate the principle of double jeopardy because the two offenses do not contain identical elements, neither offense is a lesser included offense of the other, and the offenses, although possessing similar elements, do not require the "same evidence" for a conviction. State v. Ford, 608 So.2d 1058, 1063-1064 (La.App. 1st Cir.1992). See also State v. Jacobs, 493 So.2d 766, 767-770 (La. App. 2nd Cir.1986).
Applying here the rationale of both Cureaux and Ford, we find that defendant was not subjected to double jeopardy. When defendant pointed his gun at Mr. Ghebreziabher and ordered him to give him all the money he had, the armed robbery against Mr. Ghebreziabher (count one of the indictment) was completed. Thereafter, the defendant entered the victims' home without authorization and forced them to accompany *993 him by holding them at gunpoint with the intent to commit a felony or theft. That completed the aggravated burglary (count three of the indictment). Likewise, the armed robbery of Mrs. Ghebreziabher (count two of the indictment) occurred when the defendant pointed his gun at her and forced her to give him her jewelry. Therefore, we conclude that defendant was not subjected to double jeopardy.
Defendant next asserts that the trial court erred in excluding evidence supportive of his defense. Defendant complains that the trial judge erred by excluding evidence that would have cast doubt on the identification by defendant as one of the two perpetrators. Officer O'Neil testified that a sawed-off shotgun was found in the residence of Lawrence Jacobs, which was searched in conjunction with a separate crime. Defendant sought to question the officer about the search and its results, but the state objected on the basis of relevancy. The trial judge agreed and excluded the evidence. Defendant's attorney objected to this ruling, proffering the documentary evidence.
Defendant wanted to introduce the evidence for the purpose of "contradict[ing] the victims' testimony regarding identification and to further distance himself from the egregiously guilty Jacobs." Defendant asserts that Mr. Ghebreziabher described the gun carried by defendant as the "long" one (presumably the sawed off shotgun), yet the long gun was found in Jacobs house. He contends that this would show that defendant was mistaken about the guns; thus, his identification of defendant as one of the perpetrators would also be suspect because the jury would have to wonder why the gun purportedly used by the defendant was in Jacobs' possession. He points out that the state did not produce any gun that allegedly belonged to defendant or that was allegedly used by him during the commission of the crimes.
La.C.E. art. 401 defines relevant evidence as follows:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.C.E. art. 402 provides that "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible."
Although an accused has a constitutional right to present a defense, this right does not require a trial court to admit evidence that is irrelevant. State v. Roberts, 97-959 (La.App. 5th Cir.2/25/98), 708 So.2d 1199, 1203. Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. State v. Batiste, 96-1010 (La.App. 5th Cir.1/27/98), 708 So.2d 764, 769, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954.
At trial, Mr. Ghebreziabher testified that both perpetrators carried guns. However, during direct examination, Mr. Ghebreziabher testified that the man "with the glass" carried the "big gun." Throughout his testimony, Mr. Ghebreziabher referred to Jacobs as "the skinny guy with the glass" because Jacobs wore eyeglasses. State Exhibit 2 also reflects that Jacobs wore eyeglasses.
During cross-examination, Mr. Ghebreziabher testified as follows:
Q: Okay. Now, Mr. Ghebreziabher, the gun that you described, did it look like a shotgun?
A: No.
Q: It didn't look like a shotgun, or do you know the difference?
A: I don't know what is a shotgun, but I know it's gun. I didn't know what the name.
Q: Okay. Can you describe to the Ladies and Gentlemen of the Jury by holding your hands apart approximately how long that gun was?
A: Maybe from the hand to the last one maybe can be one feet. I don't know.
Q: About a foot?

*994 A: Yeah.
(R., p. 252) (emphasis added).
Since the only description of a gun given by Mr. Ghebreziabher prior to the above colloquy was a description of the gun carried by Lawrence Jacobs, the description in the colloquy was in reference to the gun carried by Lawrence Jacobs, not defendant. This is consistent with the gun being found in Lawrence Jacobs' house and supports, rather than contradicts, the victims' testimony that Lawrence Jacobs carried a big gun that was approximately one foot long. Thus, we find that the trial judge did not abuse his discretion in ruling that the evidence was inadmissible since the evidence is irrelevant for the purposes asserted by defendant.

ERROR PATENT
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Boudreaux, 95-153 (La.App. 5th Cir.9/20/95), 662 So.2d 22, 28.
We note one patent error, also pointed out by the state. The record reflects that defendant was not advised of the three-year time limit for filing an application for post conviction relief, as required by La. C.Cr.P. art. 930.8. This article dictates that, except under certain limited circumstances, a defendant must file his application for postconviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform the defendant is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Birden, No. 95-1007 (La.App. 5th Cir.5/15/96), 675 So.2d 1187, 1190-1191; State v. Crossley, 94-965 (La.App. 5th Cir.3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459.
Accordingly, we affirm defendant's convictions of two counts of armed robbery and his conviction of one count of aggravated burglary and remand for the trial judge to inform defendant of the provisions of La.C.Cr.P. article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice.
AFFIRMED AND REMANDED.
NOTES
[1] Jacobs was not tried with defendant, but pled guilty to the charges contained in the indictment.
[2] La.C.Cr.P. art. 535 provides that a motion to quash may be filed "of right at any time before the commencement of trial" if such motion is based on the ground that "trial for the offense charged would constitute double jeopardy." La. C.Cr.P. art. 594 provides that "[d]ouble jeopardy may be raised at any time, but only once, and shall be tried by the court alone. If raised during the trial, a hearing thereon may be deferred until the end of the trial."
[3] See record pages 235-237, 252.
[4] See record pages 237, 238, 239.
[5] See record pages 239, 240, 241.
[6] See record pages 241-245.
[7] Since this Court decided Jackson, only one Louisiana Supreme Court opinion has discussed the Blockburger test. See City of Baton Rouge v. Knox, 95-2850, 95-3042, pp. 5-9 (La.7/1/97), 697 So.2d 262, 266-268. However, the issue in Knox was not whether the prosecution of a defendant for two or more crimes violated the principles of double jeopardy. In Knox, the Court was determining whether a city ordinance was preempted by various state statutory provisions.