778 So.2d 744 (2001)
STATE of Louisiana,
v.
David LEFEURE a/k/a David Lefevre.
No. 00-KA-1142.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
Rehearing Denied March 5, 2001.
*747 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Attorney For Appellant David Lefeure a/k/a David Lefevre.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Rebecca J. Becker Counsel of Record of Appeal, Terry Boudreaux Appellate Counsel, Donald A. Rowan, Jr.Trial Counsel, Vincent Paciera, Jr.Trial Counsel, Assistant District Attorneys, Courthouse Annex, Gretna, LA, Attorneys For Appellee State of Louisiana.
Panel composed of Judges GOTHARD, CANNELLA and GAUDIN, Pro Tempore.
JAMES L. CANNELLA, Judge.
Defendant, David Lefeure also known as David Lefevre, appeals from his convictions of two counts of armed robbery, two counts of second degree kidnapping and one count of aggravated burglary with consecutive sentences totaling 214 years imprisonment at hard labor. For the reasons which follow, we reverse one armed robbery conviction, affirm the other convictions, vacate all sentences and remand.
On May 30, 1999, Brenda Moore (Moore) was working as a salesperson at Bayou Daiquiris on Veterans Boulevard in Metairie, Louisiana. Her responsibilities included cleaning up and counting and dropping off the deposit at the bank. Bayou Daiquiris closed at 11:00 p.m. on May 30, 1999. Moore counted the money and turned off the lights. When she unlocked the door to leave, a man, later identified as the Defendant, pushed the door open. He pointed a gun at her and told her to move back into the store. He question her about the money. She went to the money and gave it to him. He told her to sit on the floor, take the money out of the bag, show it to him, and then put it back into the bag. She did everything that she was told. The Defendant told her to make sure everything was like it was supposed to be. He continued to point a silver-colored handgun at her. The Defendant then told her to get up and go outside with him. He took the keys and locked the back door or had her lock it, she was unclear on that point. He then told her to get into the passenger seat of her white Honda Civic because he was going to drive.
Moore and the Defendant rode down Veterans Boulevard. The Defendant asked her how to get to Slidell. Moore thinking quickly because she thought that she was going to die, told the Defendant to go to Cleary in order, to get to Airline. *748 They needed gas, so they stopped at a Texaco station on Airline Highway. The Defendant told her that they would get out of the car and pretend to be boyfriend and girlfriend. He also told her to feel the gun behind his pants. They then got out of the car and walked to the door, but the station was closed. The Defendant took the gun from the back of his pants and held it to her side or back. He told her to get back into the car and that she should not run or do anything.
They got back into the car. Moore kept thinking that she had to get out of the car as they drove down Airline Highway. When they got close to David Drive, she hoped that the light would turn red, which it did. Moore then jumped out of the car and ran back towards New Orleans. She did not see or hear the Defendant. Moore talked to the police later that night at the corner of David Drive and Airline Highway.
Meanwhile, also on the night of May 30, 1999, Aubrey Cox (Cox) was traveling down Airline Highway near David Drive in a 1982 Lincoln Towncar. There was a car that had stopped for the red light right in front of him. Cox saw a screaming young lady run behind his car. Before Cox could move from behind the car in front of him, the Defendant jumped into the front passenger seat of his car, which was unlocked. The Defendant had a gun and told Cox to drive. The Defendant told him to turn right at David Drive, which he did.
When they got to West Metairie Avenue, the Defendant told Cox to turn right. Cox did everything that the Defendant said because he did not want to get shot. Cox testified that the Defendant kept the gun to Cox's side. The Defendant kept looking back and told Cox to continue driving fast. Cox told the Defendant that he was running out of gas. When they got to Cleary, the Defendant told him to turn left. The Defendant then told Cox to pull into an E-Z Serve gas station. The Defendant told Cox that he was going to give him $15 for his trouble and for gas. Cox told the Defendant to go in and pay for the gas and Cox would pump the gas. The Defendant went into the gas station and never returned. Cox proceeded to pump $15 of gas, then left the station, turned around, and went down West Metairie Avenue.
When Cox got close to David Drive, the police stopped him. The police checked his car and found some money. Cox told the officers that the Defendant either forgot the money or left it there, but that he had no idea where it came from.
Deputy Myron Gaudet responded to a car jacking complaint on May 30, 1999. The investigation led him to an E-Z Serve location on Cleary. He and other officers spoke to the clerk at the E-Z Serve, Barbara Williams (Williams). She told the officer that the Defendant came in and paid $15 for gas. She recognized him because he was an everyday customer at the store. She knew that he lived behind the store in an apartment complex and that he drove a K & G Wrecker towing truck.
Based on the information which Williams gave to the officers, they went to an apartment complex on Cleary. They saw a white tow truck in the parking lot with K & G Towing written in orange on the side. They spoke to the apartment manager who gave them the Defendant's apartment number. They went to the apartment and knocked on the door. The Defendant opened the door, wearing shorts and sweating profusely. The Defendant matched the description of the perpetrator in size, build, and facial features. Due to the severity of the crime, they handcuffed the Defendant immediately. Deputy Gaudet advised defendant of his Miranda[1] rights and of the investigation.
*749 Deputy Gaudet brought Cox to the apartment complex on Cleary and Cox identified the Defendant as the man who had kidnaped him. The police showed Moore the money which they recovered and she identified it as the money which the Defendant stole from Bayou Daiquiris. Moore also identified the Defendant as the perpetrator.
On June 21, 1999, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with the May 30, 1999 armed robbery of Moore, in violation of La. R.S. 14:64 (Count 1); the May 30, 1999 aggravated burglary of Bayou Daiquiris at 3940 Veterans Boulevard in violation of La. R.S. 14:60 (Count 2); the May 30, 1999 second degree kidnapping of Moore, in violation of La. R.S. 14:44.1 (Count 3); the May 30, 1999 armed robbery of Cox, in violation of La. R.S. 14:64 (Count 4); and the May 30, 1999 second degree kidnapping of Cox, in violation of La. R.S. 14:44.1 (Count 5). The Defendant was arraigned on June 24, 1999 and he pled not guilty to all 5 counts.
The defense filed a motion to appoint a sanity commission to determine the Defendant's competency to stand trial. On September 16, 1999, the State and the defense stipulated that the Defendant was competent to stand trial. The defense filed motions for preliminary examination, discovery, to suppress a confession, identification and physical evidence and for criminal history information. The State filed a motion for discovery and a notice of intent to use and introduce into evidence at trial a statement of the Defendant at trial. The Defendant's motion to suppress confession, identification and physical evidence was first heard on October 15, 1999 and the hearing was conducted over the course of several days. The trial court denied the motion to suppress. On October 15, 1999, the Defense made an oral motion to quash Count 4 of the bill of information based on double jeopardy grounds, which was denied. Trial was held on February 3 and 4, 1999.
At trial, the Defendant represented himself with the assistance of counsel. The State presented evidence that the Defendant committed the crimes with which he was charged. The Defendant, who did not testify, presented evidence attempting to show that he and Moore knew each other and had a relationship, that there was no aggravated burglary of Bayou Daiquiris or armed robbery of Moore, that Moore left Bayou Daiquiris with him willingly, that no gun was found because there was no gun, and that he should not be convicted of the armed robbery of Cox, because he did not take anything from Cox.
The jury found the Defendant guilty as charged on all counts. On March 3, 2000, the Defendant filed in open court a motion for new trial that was denied. The Defendant waived delays for sentencing and the trial judge sentenced the Defendant to 99 years imprisonment at hard labor on Count 1 (the armed robbery of Moore) 30 years imprisonment at hard labor on Count 2 (the aggravated burglary of Bayou Daiquiri) 40 years imprisonment at hard labor on Count 3 (the second degree kidnapping) 5 years imprisonment at hard labor on Count 4 (the armed robbery of Cox) and 40 years imprisonment at hard labor on Count 5 (the second degree kidnapping of Cox) for a total of 214 years. The sentences were ordered to be served consecutively and without benefit of parole, probation, or suspension of sentence. The sentences were all the maximum except Count 4. The trial judge found that the offenses were crimes of violence and denied eligibility of diminution of sentence for good behavior in accordance with La. C.Cr.P. art. 890.1. It is from these convictions and sentences that the Defendant appeals, assigning three errors.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error the Defendant argues that double jeopardy prevents the State from prosecuting him for both the aggravated burglary of Bayou Daiquiris and the armed robbery of *750 Moore. He also argues that double jeopardy or principles of insufficient evidence prevent the State from prosecuting him for both armed robbery and second degree kidnapping of Cox.
The State contends that each of the crimes charged against the Defendant was a separate and distinct offense and that the Defendant could be prosecuted for and convicted of each offense without violating the principle of double jeopardy. The State also argues that the Defendant committed an armed robbery of Cox when he took Cox's freedom to use his car. During the hearing on the motion to suppress, the Defendant orally moved to quash Count 4 (the armed robbery of Cox). The motion was denied. The Defendant did not file a motion to quash either the aggravated burglary or the armed robbery charge on double jeopardy grounds. Although double jeopardy is usually raised in a pretrial motion to quash, it can be raised at any time, but only once. State v. Freeman, 577 So.2d 216, 219 (La.App. 1st Cir.1991), writ denied, 91-0819 (La.5/24/91), 580 So.2d 668; La.C.Cr.P. arts. 532(a) and 594. Therefore, it appears that assignment of error number one regarding double jeopardy is properly before this court on appeal.
The law on double jeopardy was set forth by this court in the case of State v. Bridgewater, 98-658 (La.App. 5th Cir.12/16/98), 726 So.2d 987 as follows:
The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. La.C.Cr.P. art. 591 provides:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 77 or ordered with the express consent of the defendant.
"Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act." State v. Jackson, 96-661 (La. App. 5th Cir.4/9/97), 694 So.2d 440, 448, writ denied, 97-1050 (La.10/13/97), 703 So.2d 609, writ denied, 97-1255 (La.10/13/97), 703 So.2d 612. "However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy." State v. Washington, 95-771, p. 8 (La.App. 5th Cir.2/14/96), 670 So.2d 1255, 1260. "Louisiana has not adopted a `same transaction' test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed during one sequential, continuing course of conduct." Id.

In Jackson, 694 So.2d at 448, this Court explained the two tests used by the Louisiana courts when examining double jeopardy violations as follows:
The "distinct fact" test, commonly referred to as the Blockburger test, is taken from the United States Supreme Court's holding in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In State v. Knowles, 392 So.2d 651, 654 (La.1980), the Louisiana Supreme Court outlined the Blockburger criteria for examining violations of double jeopardy:
... the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...
The second test is the "same evidence" test. In State v. Steele, 387 So.2d 1175 (La.1980), the Louisiana Supreme Court explained that test as follows:

*751 If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The "same evidence" test is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
Although the Louisiana Supreme Court has accepted both the Blockburger test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).
State v. Bridgewater, 726 So.2d at 991.
On the Defendant's first double jeopardy claim, concerning the offenses of aggravated burglary of Bayou Daquiri and armed robbery of Moore, we find no merit.
Armed robbery is defined in La. R.S. 14:64 as follows:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Aggravated burglary is defined in La. R.S. 14:60 as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon
. . .
In Bridgewater, the defendant was convicted of armed robbery and aggravated burglary and he appealed. The defendant argued that the trial court erred in denying his motion to quash because the indictment violated the constitutional prohibition against double jeopardy when it subjected him to multiple punishments for the same offense. The victim, in Bridgewater, testified that he was working on his car in the driveway, when the defendant and another man approached him from behind, pointed their gun at him and ordered him to give him all of his money. The victim's wife was standing nearby. The perpetrators ordered both to go inside their house. The two men then ordered the victim's wife to give them all of her jewelry. The perpetrators searched through the victims' belongings and eventually left. Id. at 989.
This court found that the defendant in Bridgewater was not subject to double jeopardy based on the following analysis:
When defendant pointed his gun at Mr. Ghebreziabher and ordered him to give him all the money he had, the armed robbery against Mr. Ghebreziabher was completed. Thereafter, the defendant entered the victims' home without authorization and forced them to accompany him by holding them at gun-point with the intent to commit a felony or theft. That completed the aggravated burglary. Likewise, the armed robbery of Mrs. Ghebreziabher occurred when the defendant pointed his gun at her and forced her to give him her jewelry. Therefore, we conclude that defendant was not subjected to double jeopardy.
State v. Bridgewater, 726 So.2d at 992-993.
In reaching its conclusion that the defendant was not subjected to double jeopardy, the court in Bridgewater used the rationale of State v. Cureaux, 467 So.2d 1377, 1379-1380 (La.App. 5th Cir.1985) and State v. Ford, 608 So.2d 1058, 1063-1064 (La.App. 1st Cir.1992), which both held that convictions for the crimes of aggravated burglary and armed robbery do not violate the principle of double jeopardy:
In State v. Cureaux, 467 So.2d 1377, 1379-1380 (La.App. 5th Cir.1985), defendants were charged with aggravated *752 burglary and armed robbery. One of the defendants knocked on the door to the victims' home and asked if she could use the telephone. When the victims opened the door to allow her to enter their home, defendants burst through the door. Defendants were armed with guns. After committing batteries upon the victims, defendants stole various items from the house.
On appeal, defendants claimed that a joint trial for the crimes of aggravated burglary and armed robbery subjected them to double jeopardy. A panel of this court held that, although the crimes arose from the same criminal incident, prosecution for both aggravated burglary and armed robbery did not violate the bar against double jeopardy because the two crimes encompass different elements. Id. We explained that the crime of aggravated burglary was completed upon the defendants' entry into the victims' residence, while the victims were present, with the specific intent to commit theft while armed with guns, or when they committed battery upon the victims. Id. Further the armed robbery did not occur until the defendants actually took the victims' belongings while holding the victims at gunpoint.
The First Circuit has determined that under both the Blockburger test and the "same evidence" test, convictions for the crimes of aggravated burglary and armed robbery do not violate the principle of double jeopardy because the two offenses do not contain identical elements, neither offense is a lesser included offense of the other, and the offenses, although possessing similar elements, do not require the "same evidence" for a conviction. State v. Ford, 608 So.2d 1058, 1063-1064 (La.App. 1st Cir.1992). See also State v. Jacobs, 493 So.2d 766, 767-770 (La.App. 2nd Cir.1986).
State v. Bridgewater, 726 So.2d at 992.
In this case, using the rationale in Bridgewater, we find that the crime of aggravated burglary of the Bayou Daiquiris store was completed upon the Defendant's unauthorized entry into the store by pushing his way in when Moore unlocked the door to leave, while Moore was present, with the specific intent to commit a felony of theft while armed with a gun. The crime of armed robbery of Moore was thereafter accomplished when he forced Moore at gunpoint to turn over the money.
Based on the foregoing, we find no double jeopardy violation in trying and convicting the Defendant of both the aggravated burglary of Bayou Daiquiris and the armed robbery of Moore.
On the Defendant's second double jeopardy claim, concerning the offenses of armed robbery of Cox and second degree kidnaping of Cox, we find that prosecution and conviction for both offenses violates double jeopardy principles.
Armed robbery, as quoted above, is defined in La. R.S. 14:64 as follows:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Second degree kidnapping is defined in La. R.S. 14:44.1 as follows:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(5) Imprisoned or kidnaped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another ...
*753 In this case, using the above principles on double jeopardy and applying them to the specific facts of this case we find that the evidence required to support the conviction of armed robbery would also have supported the conviction for second degree kidnapping. Thus, under the "same evidence" test, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. When the Defendant entered Cox's vehicle armed with a dangerous weapon and forced Cox to drive him somewhere, he simultaneously committed the acts which could have supported a conviction for either offense. Other than taking Cox's free will to drive his vehicle where he pleased, as the Defendant commanded at gunpoint that Cox drive him to a certain location, the Defendant took nothing of value from Cox. In presenting the facts to prove one offense, the other offense is simultaneously established. Therefore, since the same evidence will support a conviction for either offense, the Defendant cannot be put in jeopardy for the two separate offenses.
In accord with the above findings, one of the Defendant's convictions and sentences for either the crime of armed robbery of Cox or second degree kidnapping of Cox must be vacated. The general rule is to vacate the conviction and sentence for the less severely punishable offense and affirm the conviction for the more severely punishable offense. However, the courts have recognized that if it is more in keeping with the general sentencing scheme, the appellate court may depart from the general rule and affirm the conviction with the more severe actual sentence, even though it may require vacating the conviction for the more severely punishable sentence. State ex rel Adams v. Butler, 558 So.2d 552 (La.1990); State v. Thomas, 99-2219 (La.App.4th Cir.5/17/00), 764 So.2d 1104; State v. Welch, 584 So.2d 1211 (La.App. 2nd Cir.1991), writs denied, 589 So.2d 1057 (La.1991).
In the instant case, the trial court sentenced the Defendant to 40 years (the maximum sentence) on the second degree kidnapping of Cox and to only 5 years on the armed robbery of Cox, even though the maximum sentence permitted for armed robbery is 99 years. Therefore, as in Adams, we will vacate the Defendant's conviction and sentence for the less severely punished offense, the armed robbery of Cox, rather than for the less severely punishable offense.
Thus, we find that this assignment of error lacks merit as to the Defendant's claim of double jeopardy to the offenses of aggravated burglary of Bayou Daiquiri and armed robbery of Moore, but it has merit as to the Defendant's claim of double jeopardy to the offenses of armed robbery of Cox and second degree kidnapping of Cox, and we order the conviction and sentence for the armed robbery of Cox reversed and vacated.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the Defendant argues that the trial court erred in denying his motion to suppress evidence obtained following his arrest. More particularly, the Defendant claims that the police officers immediately placed handcuffs on him and arrested him when they entered his apartment. He claims that the arrest was effectuated prior to questioning, the taking of statements, and the search of the Defendant's residence and truck. The Defendant asserts that the police officers did not have probable cause to arrest him and that an arrest warrant should have been obtained or probable cause established before he was taken into custody. He states that the officers had only enough information to warrant an investigatory stop, but not an arrest, and that the arrest violated La. C.Cr.P. arts. 201, 213(3), and 218.1.[2] The Defendant also *754 contends that he was not given a Miranda warning until after an arrest was made.
The State argues that the police officer had probable cause to arrest the Defendant and, therefore, the arrest was legal. The State contends that, because the arrest was legal, the trial court properly denied the Defendant's motion to suppress. The State claims, in the alternative, that even if the arrest was illegal, the impermissibly seized evidence should not be suppressed because of the attenuation doctrine.
The law regarding probable cause is set forth in the case of State v. Williams, 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118 (citations omitted) as follows:
An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal ...
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime ...
Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act ...
State v. Williams, 735 So.2d 62 at 72.
In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion, but may also consider pertinent evidence given at the trial. State v. Bell, 97-1134 (La.App. 5th Cir.2/25/98), 709 So.2d 921, 923; State v. Byes, 94-611 (La. App. 5th Cir.12/28/94), 648 So.2d 1073, 1074 (and the cases cited therein).
In this case, Deputy Gaudet testified that his investigation of the incident led him to an E-Z Serve gas station. He and the other officers already had a physical description of the suspect from the two victims. The officers spoke to Williams, a clerk at the E-Z Serve, who told the officers that the suspect had come into the store on that night and had paid for gas, that he came into the store on a regular basis, that he drove a K & G towing truck, and that he lived in an apartment complex behind the E-Z Serve gas station. Deputy Gaudet and the other officers went to the apartment complex and saw the K & G truck in the parking lot. They described the suspect to the apartment complex manager, who told the officers in which apartment the suspect lived. Deputy Gaudet and the other officers went to the door of the suspect's apartment, knocked, and a man answered the door. The man fit the victims' description that was being broadcast on the police radio. Deputy Gaudet also noticed that the suspect was sweating, which he thought was unusual since it was 1:00 a.m. At that point, Deputy Gaudet arrested the Defendant and advised him of his constitutional rights.
Based on the foregoing, we find that the facts and circumstances known to *755 Deputy Gaudet and the other officers, and of which they had reasonable trustworthy information, were sufficient to justify a man of ordinary caution, particularly a police officer, in believing that the person to be arrested had committed a crime. Thus, we conclude that the officers had probable cause to arrest the Defendant when they handcuffed him. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, the Defendant argues that his sentences are unconstitutionally excessive. The Defendant argues that the imposition of sentences in excess of a natural life span without specific justification are so cruel and unusual as to fall within the parameters of the constitutional prohibition. He points out further that the trial judge offered no special justification for the consecutive maximum sentences other than stating that the offenses were violent. The Defendant claims that in formulating the penal provisions for armed robbery, aggravated burglary, and second degree kidnapping, the Legislature has already taken into account that the offenses are violent in nature and structured their sanctions accordingly. The Defendant argues, therefore, that only using the violent nature of the crimes as justification did not meet the requirement that the trial court give "special" reasons for the imposition of consecutive and/or maximum sentences.
The Defendant further argues that the record itself does not justify consecutive maximum sentences either. He contends that the State only made allegations about the Defendant's past convictions with no record proof. The Defendant further noted that nothing was made part of the record proving a pattern of "repeated criminality" that justified maximum consecutive sentences totaling 214 years. He claims that the circumstances of the offense were not so heinous as to classify him as a most egregious offender, neither victim was physically harmed, and there was no deliberate cruelty. The Defendant points out that Cox did not even intend to report what had happened to him.
Louisiana Constitution, Article 1, Section 20 prohibits the imposition of excessive punishment. Although a sentence is within the statutory limits, the imposition of that sentence may still violate a defendant's constitutional right against excessive punishment. State v. Cann, 471 So.2d 701 (La.1985); State v. Telsee, 425 So.2d 1251 (La.1983). A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, needlessly imposes pain and suffering, or is grossly out of proportion to the gravity of the offense so as to shock our sense of justice. State v. Lobato 603 So.2d 739 (La.1992). A trial judge has wide discretion in the imposition of a sentence and a sentence will not be set aside absent a showing of manifest abuse of that discretion. Maximum sentences are reserved for cases involving the most serious offenses and the worst offenders. State v. Lisotta, 97-406 (La.App. 5th Cir.2/25/98), 712 So.2d 527; State v. Lanieu, 98-1260 (La.App. 1st Cir.4/1/99), 734 So.2d 89; State v. Stewart, 29,716 (La.App.2nd Cir.8/20/97), 698 So.2d 721. If a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, concurrent sentences are recommended. La.C.Cr.P. art. 883. If the trial court elects to impose consecutive sentences for crimes arising out of a single transaction, the trial court must articulate particular justification for such a sentence. State v. Johnson, 97-867 (La.App. 5th Cir.4/15/90), 711 So.2d 848, writ denied, 98-1293 (La.10/9/98), 726 So.2d 20; State v. Spradley, 97-2801 (La.App. 1st Cir.11/6/98), 722 So.2d 63, rehearing denied, writ denied, 99-0125 (La.6/25/99), 745 So.2d 625; State v. Maxie, 30,877 (La. App.2nd Cir.8/19/98), 719 So.2d 104.
Here, the trial court sentenced the Defendant, without any particular justification other than that the crimes were violent, to the maximum sentence for each *756 offense and then ordered that the sentences were to run consecutively, despite the fact that the crimes arose out of a singular transaction. Thus, the Defendant was sentenced to 209 years in prison without benefit of parole, probation or suspension of sentence. This sentence shocks our sense of justice. We find that it makes no measurable contribution to acceptable goals of punishment, needlessly imposes pain and suffering, is grossly out of proportion to the gravity of the offense and was an abuse of the trial court's sentencing discretion.
There is no doubt that the record shows that the crimes committed were serious. Defendant threatened Moore with a gun and forced her to give him money. He then forced her to ride with him in her car while he drove. Moore testified that she was afraid and thought she was going to die. The Defendant then jumped out of that car and entered Cox's car, pointed a gun at him and told him to drive. Neither Moore nor Cox were physically injured. When the Defendant and Cox got to the E-Z Serve gas station, the Defendant told Cox that he would give him something for his trouble and that he would pay the attendant $15 for Cox to fill his car with gas. The Defendant gave the attendant the money and then walked home, never returning to Cox's car. Moreover, the offenses were all part of the same transaction.
In imposing the maximum sentences for each offense and ordering that the sentences were to run consecutively, the trial judge did not articulate any specific reasons for doing so, despite the fact that the law is well settled that such sentences are reserved for the worst offenses and the worst offenders and specific reasons for justifying the imposition of such sentences must be expressly articulated. Neither the Defendant nor his offenses are the worst of the class.
Therefore, we find that the imposition of maximum sentences for each of the four offenses, to run consecutively, which total 209 years without benefits, without articulated reasons or reasons evident from the record, is constitutionally excessive and must be vacated.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).
Although we found that the trial court did not properly advise the Defendant of the prescriptive period for post-conviction relief as prescribed by La. C.Cr.P. art. 930.8, that issue is moot since the case is being remanded for resentencing. No other errors were found.
Accordingly, for the reasons set forth above, we affirm the Defendant's convictions of aggravated burglary of Bayou Daiquiri (Count 1), armed robbery of Moore (Count 2), second degree kidnapping of Moore (Count 3), and second degree kidnapping of Cox (Count 5). The Defendant's conviction of armed robbery of Cox (Count 4) is reversed. The sentences imposed for all offenses are vacated. The case is remanded for resentencing.
CONVICTIONS ON COUNTS 1, 2, 3 AND 5 ARE AFFIRMED; CONVICTION ON COUNT 4 IS REVERSED; SENTENCES VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] LSA-C.Cr.P. art. 201:

Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
LSA-C.Cr.P. art. 213:
A peace officer may, without a warrant, arrest a person when:
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer ...
LSA-C.Cr.P. art. 218.1:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.