809 So.2d 1056 (2002)
STATE of Louisiana
v.
Troy ALEMAN.
No. 01-KA-743.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
*1060 Jane L. Beebe, Gretna, LA, Attorney for Appellant Troy Aleman.
Troy David Aleman, St. Gabriel, LA, Defendant In Proper Person.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Thomas J. Butler, Counsel of Record on Appeal, Terry M. Boudreaux, Appellate Counsel, Thomas S. Block, Trial Counsel, Douglas W. Freese, Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
Defendant, Troy Aleman, appeals from his jury convictions of three counts of first degree robbery, violations of La. R.S. 14:64.1. He also appeals his sentences of 10 years on two counts and his enhanced sentence of 20 years as a second felony habitual offender, all sentences to be served in prison at hard labor and consecutively.[1] We affirm.
*1061 The three robberies herein occurred on June 13, 1995 and June 20, 1995. On June 13, 1995, Elizabeth Guaraggi (Guaraggi) was working as a teller at a branch of Jefferson Federal Savings Bank on Veterans Boulevard in Metairie. From her post at the drive-through window, she observed the Defendant enter the bank. He was wearing a blonde, shoulder-length wig and a cap. The other tellers were not at their windows, so Guaraggi greeted the Defendant. She testified that he lifted his shirt, revealing that he had a gun tucked into the waistband of his pants. The handle of the gun was visible. The Defendant demanded that Guaraggi give him all of her money and handed her a bag in which to put it. He ordered everyone else in the bank to lie on the ground. Guaraggi returned to her drawer at the drive-through window and put $2,500 in cash in the Defendant's bag. She also gave him bait money. According to Special Agent Steven Slote of the Federal Bureau of Investigation (FBI), "bait money" is currency which is marked and recorded on the police computer. Bank tellers are instructed to pass the marked money to the perpetrator in the event of a bank robbery as a way of connecting the robber with the offense. The Defendant took the money and left the bank.
On June 20, 1995, Myron Gogarty (Gogarty) was working as a bank teller at the First American Bank on Veterans Boulevard in Metairie. She testified that, while looking out of the window, she saw an oddly dressed man approaching the entrance. She particularly noticed that he was wearing a woman's wig. The man entered the bank, handed her a bag, and ordered her to "put all the money in it." The man, who was wearing two shirts, had a white-handled gun tucked in his belt. Gogarty activated the silent alarm. She opened her cash drawer and put the money into the man's bag. She included a dye packet and $1,000 in marked bills. Virginia "Jean" Brown (Brown) was working at the teller's station next to Gogarty's station. She also saw the robber and heard him demand money from Gogarty. Brown did not see a gun, but assumed that the man had one.
During the incident, a customer, David Cortez (Cortez), approached Brown's window with the intention of making a deposit. The robber ordered Cortez to kneel on the floor. Cortez complied. He testified that the robber wore a blonde wig, sunglasses and a cap. He saw the man put his hand into his shirt and this led him to believe the man had a gun. Cortez stated that he got a good look at the man's face. After the robber turned his attention to Cortez, Gogarty dove under the counter. Brown testified that the robber then turned to her and ordered her to give him money. After she placed some cash on the counter, the robber put it in his bag and left.
Just outside of the building, the dye packet exploded in the bag, staining some of the stolen money. The robber retrieved some, but left the rest of the money on the *1062 ground. That money, $9,577, was turned over to Agent Slote. Police obtained surveillance tapes of the incident from the bank and a compilation of those tapes was played for the jury at trial.
Debria Pardo (Pardo) works at a preschool across the street from the First American Bank. She saw the robber enter the building. According to her description, he wore a long "white" curly wig, a red baseball cap, and dark sunglasses. A short time later, Pardo saw the man exit the bank carrying a plastic grocery bag. The bag began to melt, and red smoke emanated from it strewing money on the ground. Pardo stated that the man casually leaned over and gathered up some, but not all of the money. Pardo called to her co-workers to call 9-1-1. She said that the man drove away from the scene in a white car.
On July 20, 1995, Guaraggi viewed a photographic lineup and identified the Defendant as the robber. A physical line-up was held on August 1, 1995. Guaraggi, Cortez, Gogarty, and Brown all attended. Each witness positively identified the Defendant as the perpetrator of the bank robberies, although Brown testified that she was "reasonably certain" she selected the right person. Brown identified the Defendant in court as the robber, but qualified her statement by stating that she was as certain about her identification as she could be without seeing Defendant in the disguise. Guaraggi also identified the Defendant at trial.
Patricia Adams, an expert in latent fingerprint and ink fingerprint identification, testified that she compared a fingerprint taken at First American Bank on June 20, 1995 with known prints from the Defendant. It was her opinion that the prints matched.
Deputy George Giron testified that he was involved in the investigation of the two bank robberies. He obtained an arrest warrant for the Defendant and a search warrant for his Metairie apartment. Deputy Giron testified that among the items recovered from the Defendant's home were shoe boxes containing money, a white baseball cap, a brown curly wig, a pair of sunglasses, and a plastic toy revolver with white grips. A total of $3,179 was found at his apartment. Agent Slote testified that none of the money found during the search could be traced to the money taken in the First American Bank robbery.
On appeal, the Defendant asserts that the evidence was insufficient to sustain his conviction for the first degree robbery of Brown and that the trial judge erred in admitting the evidence of other crimes. The Defendant further asserts that the conviction should be reversed because of judicial/prosecutorial misconduct, the trial judge erred in failing to subpoena 12 witnesses listed by him for trial, and in denying his motion for a continuance, and the sentence is excessive.[2]
In his first assignment of error, the Defendant argues that the evidence at trial was insufficient to support his conviction because the State failed to prove that he led bank teller Brown to reasonably believe he was armed.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, *1063 98-932 (La.App. 5th Cir.2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
La.R.S. 14:64.1 provides:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
In State v. Fortune, 608 So.2d 148 (La. 1992), the Louisiana Supreme Court explained that the first degree robbery statute has both objective and subjective components. The Court stated:
The state must prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim, but otherwise allows the victim's subjective beliefs to determine whether the offender committed first degree robbery or the lesser offense of simple robbery (La.R.S.14:65)....
Direct testimony by the victim that he believed the Defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the Defendant's threats, may support a conviction for first degree robbery. (Citations omitted)
State v. Fortune, 608 So.2d at 149; See also, State v. Stanley, 98-920 (La.App. 5th Cir.2/10/99), 729 So.2d 33, 36, writ denied, 99-0614 (La.6/25/99), 745 So.2d 1186.
At trial, Brown testified that when the Defendant entered the bank, he said, "This is a robbery. Give me your money." She did not see a weapon and did not see the Defendant do anything with his hands that would indicate that he had a gun, but she assumed from what he said that he must have one. She testified that she was fearful that the Defendant had a weapon and she did not do anything at first because she was afraid to move. When the Defendant approached her teller window and demanded that she give him money, Brown immediately complied. We find that this evidence is sufficient under Fortune to support a subjective belief on Brown's part that the Defendant was armed with a dangerous weapon.
Further, such a belief was objectively reasonable under the circumstances. Cortez was standing next to the Defendant and Brown. He did not see a weapon, but believed that the Defendant had a gun when he saw the Defendant's hand move under his shirt. In addition, Gogarty observed an object that she believed was a gun. She set off the alarm and gave the Defendant the money which he demanded.[3]
*1064 The evidence meets the Fortune criteria. The State proved that the Defendant caused a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. Thus, we find no error in this regard.
The Defendant next asserts that the trial judge erred in admitting other crimes evidence. The Defendant argues that the trial judge erred in admitting evidence of a bank robbery which he was alleged to have committed at a branch of the Regions Bank in Baton Rouge.
Evidence of other crimes or bad acts committed by a criminal defendant is generally not admissible at trial. La.C.E. art. 404B(1); State v. Prieur, 277 So.2d 126, 128 (La.1973); State v. McGinnis, 00-219 (La.App. 5th Cir.8/29/00), 768 So.2d 216, 218. However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Silguero, 608 So.2d 627, 629 (La.1992); State v. Hopson, 98-943, pp. 12-13 (La.App. 5th Cir.3/30/99), 735 So.2d 81, 87, writ denied, 99-1315 (La.11/12/99), 749 So.2d 650.
La.C.E. art. 404B(1) provides:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Prieur sets forth several requirements that the State must meet before other crimes evidence may be admitted at trial, including providing written notice to the Defendant and showing by clear and convincing evidence that the Defendant committed the other crimes. However, La. C.E. art. 1104, enacted in 1994, requires that the burden of proof for a Prieur hearing in Louisiana be the same as that required by the Federal Rules of Evidence, Art. IV, Rule 404. In Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court found the clear and convincing standard is no longer the required standard of proof, and that the applicable standard is a preponderance of the evidence. This Court has recognized the preponderance of the evidence standard as the burden of proof in a Prieur hearing. See: State v. Dickerson, 00-951 (La.App. 5th Cir.11/2/00), 772 So.2d 845, 853, fn. 3; State v. Hernandez, 98-448, p. 18 (La.App. 5th Cir.5/19/99), 735 So.2d 888, 898, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194. The Louisiana Supreme Court, however, has consistently used the clear and convincing standard of proof, and has declined to address the question of how C.E. art. 1104 and Huddleston affect the burden of proof with respect to other crimes evidence. See: State v. Miller, 98-0301 *1065 (La.9/9/98), 718 So.2d 960; State v. Cotton, 00-0850 (La.1/29/01), 778 So.2d 569, reh'g granted in part, 00-0850 (La.4/20/01), 787 So.2d 278.
Other crimes evidence may not be a mere subterfuge for depicting a defendant's bad character. Its probative value must outweigh its prejudicial effect. La.C.E. art. 403. If a defendant so requests, the court must instruct the jury as to the limited purpose for which other crimes evidence may be considered. State v. Prieur, 277 So.2d at 130.
In the instant case, the State filed the required pre-trial motion to introduce evidence of other crimes committed by the Defendant alleging that the Defendant used the same method in committing several robberies in the Metairie area, as well as the robbery of a branch of Regions Bank in Baton Rouge. In each incident, the Defendant was said to have possessed what appeared to be a handgun with white grips, and while wearing a disguise which included a curly blonde wig, sunglasses and a baseball cap. The State alleged that it was through the identification of the Defendant as the perpetrator of the Baton Rouge robbery that Jefferson Parish law enforcement officers were able to link him to the instant robberies.[4]
At trial, Cosenza testified that she was working in the loan department at Regions Bank in Baton Rouge on July 14, 1995. At about 4:00 p.m., a man entered the bank wearing a baseball cap, a long, brownishblonde wig, sunglasses and a baseball cap. He approached Cosenza and pointed a black and white gun at her side. She believed that the gun was real. The man ordered everyone to get on the floor. Cosenza remained standing and continued to look at him until he again ordered her to get on the floor. The perpetrator gave a teller, Kelly, two plastic grocery bags and demanded that she put money in them. He told Kelly, "Don't give me any of that dye stuff." Kelly gave the man money and he fled the bank. The incident was recorded by the bank's video surveillance camera.
Kelly testified that she attended the physical lineup in Jefferson Parish on August 1, 2000 and identified the Defendant as the perpetrator of the robbery at Regions Bank. She initially marked her choice in the "tentative" column on the physical lineup form that she completed, but explained that she did so inadvertently. She was certain of her choice immediately. Kelly also identified the Defendant in court. She further testified that State's Exhibit 30 looked like the wig that the Defendant wore at the time of the robbery and that she recognized the gun in evidence as the one which the Defendant had at the bank.
Carolyn Booker, of the Louisiana State Police Crime Lab in Baton Rouge, testified that she recovered several latent fingerprints from inside Regions Bank after the robbery. Jackie Hohensee (Hohensee)of the Louisiana State Police Bureau of Identification, a latent fingerprint expert, entered those prints into the Automated Fingerprint Identification System (AFIS). The computer produced fifteen possible matches for the fingerprints. Hohensee compared the latent fingerprints with the Defendant's known prints and found that four of the latent prints lifted from a plastic bag in the Regions Bank robbery matched the Defendant's prints.
We find that the State satisfied its burden under Prieur. It notified the Defendant properly, and the evidence was admissible to show plan or knowledge. The *1066 perpetrator of the Baton Rouge robbery used a similar or same gun, wore a similar or same wig and baseball cap. He let the weapon be seen and/or implied that he was armed. Furthermore, regardless of the standard of proof applied, the State sufficiently proved that the Defendant was the same person who committed the robbery in Baton Rouge. The Defendant's fingerprints were found at both First American Bank and at Regions Bank following the robberies. He was identified by witnesses to the Jefferson Parish robberies and by Cosenza and Kelly, the witnesses to the Baton Rouge robbery. The witnesses' description of the Regions Bank robber clearly matched the descriptions given by witnesses to the instant robberies. In addition, Deputy Giron testified that it was through the investigation of the Baton Rouge robbery that his department received information which led them to the arrest of the Defendant.[5] Thus, the trial judge did not err in admitting the other crimes' evidence.
The Defendant next asserts that because he withdrew his guilty pleas and chose to be tried for the charged offenses, he was made a victim of prosecutorial vindictiveness and judicial misconduct. He states that, after pleading guilty to five counts of armed robbery, he was given concurrent sentences of thirty years each. After he withdrew his guilty pleas, he was tried and convicted on three counts of first degree robbery. The State then filed a habitual offender bill of information, and he eventually received sentences of ten years on counts two and three, and an enhanced sentence of twenty years on count one, consecutive, resulting in a total of forty years of imprisonment. The Defendant asserts that because he refused an offer of a second plea bargain and instead chose a trial by jury, the prosecutors and the trial judge penalized him by imposing sentences totaling ten years more than his original sentences.
The Defendant did not raise this issue either by objection at the time of sentencing, or in his motion to reconsider sentence. Therefore, the issue is not properly before this Court. Nonetheless, we have reviewed it and find no merit to the argument.
Generally, if a convicted defendant is successful in having his conviction overturned on appeal, and is subsequently retried and convicted, the trial judge may not then impose a more severe sentence. North Carolina v. Pearce, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080,23 L.Ed.2d 656 (1969). The purpose behind this rule is to prevent defendants from being penalized for having exercised their constitutional rights. Id.
If a trial judge has agreed to impose a particular sentence pursuant to a plea bargain, as was the case here, this does not restrict him from imposing a more severe sentence if the Defendant elects to go to trial and is convicted. The sentencing judge must nonetheless comply with constitutional standards, and the sentence should not be increased due to vindictiveness arising from the exercise of the defendant's right to stand trial. State v. Frank, 344 So.2d 1039, 1045 (La.1977). "A judge's disposition to impose a lenient sentence during plea discussions should not be understood as setting a limit for the justifiable sentence under accepted principles of criminal justice. The better view, we think, is that the plea proposal is a concession from the greatest justifiable sentence, the concession being made because of circumstances surrounding the plea." Id.
*1067 In Bordenkircher v. Hayes, 434 U.S. 357, 363-364, 98 S.Ct. 663, 668-669, 54 L.Ed.2d 604 (1978), the U.S. Supreme Court stated:
"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `patently unconstitutional.' But in the `give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.
* * * * * *
While confronting a Defendant with the risk of more severe punishment clearly may have a `discouraging effect on the Defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'and permissible`attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the Defendant to forgo [sic] his right to plead not guilty." [Citations omitted]
In State v. Henderson, 94-286 (La.App. 5 Cir. 12/14/94), 648 So.2d 974, 978, this Court held that an eighteen-year habitual offender sentence, imposed on the defendant after he chose not to accept plea bargains offering sentences of six and onehalf years on an underlying burglary offense and fifteen years on the habitual offender bill, of information, was not vindictive. We reasoned that the defendant was given a choice of accepting or rejecting the offer and opted to reject it.
In the present case, the Defendant also chose not to accept the plea bargains offered by the State, thereby taking the risk of a greater penalty upon conviction by a jury. As part of the agreement for the original pleas, the State stated that it would not file a habitual offender bill of information. When the plea agreement was revoked, the State was free to file the habitual offender bill of information. When the trial court sentenced the Defendant following his jury conviction, it was not as a first-time offender, but as a habitual offender. There is nothing in the record that shows that the Defendant's sentences are a product of the vindictiveness of prosecutors or the trial judge. In fact, the enhanced sentence of 20 years imposed on count one was the minimum sentence under the first degree robbery and habitual offender statutes. Thus, we find that the Defendant's sentences were not imposed to punish the Defendant for exercising his rights.
In the next assignment of error, the Defendant complains that he was denied compulsory process. He argues that he was prejudiced by the trial judge's failure to order subpoenas served on 12 witnesses listed by defense counsel in a document filed on May 8, 2000. However, the record does not contain such a list. Thus, we cannot rule on this issue.
The Defendant further contends that he was denied due process because the trial judge refused his request for a trial continuance to allow time for the psychiatric evaluations which he requested. The minute entries in the record show that there were numerous trial continuances granted in this case, many of them at the request of the defense. There is no evidence in the record that defense counsel requested a continuance on the day of trial. In any case, the Defendant had ample time in which to obtain such evaluation *1068 between the day on which the trial judge granted funds for psychiatric evaluations and the time of trial. Any alleged neglect on the part of defense counsel to pursue said evaluations must be addressed as part of an ineffective assistance of counsel claim, which we address below.
The Defendant filed a pro se brief in which he alleges that his counsel was ineffective because he failed to pursue an insanity defense. The Defendant argues that he is a veteran of the United States Army, discharged in 1991 with an "other than honorable condition." He claims that his service in the Gulf War exposed him to chemical agents that adversely affected his mental health and his ability to distinguish right from wrong at the time of the offenses.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a twopronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5th Cir.4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5th Cir.7/1/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388.
In order to show prejudice, the defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; Soler, 636 So.2d at 1075. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. Addison, 00-1730 (La.App. 5th Cir.5/16/01), 788 So.2d 608, 615.
Claims for ineffective assistance of counsel are most appropriately addressed through application for postconviction relief, so as to afford the parties an adequate record for review. Peart, 621 So.2d at 787. However, if the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29, 31, cert. denied, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998); State v. Pendelton, 00-1211 (La.App. 5th Cir.3/14/01), 783 So.2d 459, 465-466.
On May 5, 2000, defense counsel filed a Motion for Leave to Enter Dual Plea of Not Guilty by Reason of Insanity. He later moved the trial court to allot the Defendant funds to obtain psychiatric evaluations. The trial judge granted the motion, ordering that $1,500 be allotted to the Defendant in order that he might secure the services of a psychiatrist. In a continuance motion filed on May 5, 2000, the Defendant asked for a trial delay in order to obtain his medical and psychiatric records from the United State's Army. The continuance was denied, although the trial was not ultimately held until January 11, 2001. There was sufficient time to obtain the records prior to trial, but no such *1069 documents were offered or mentioned at the time of trial.
On May 8, 2000, defense counsel filed a Rule to Show Cause Why Motion for Leave to Enter Dual Plea of Not Guilty and Not Guilty by Reason of Insanity Should Not be Granted. In that motion, he alleged that the Defendant did not know right from wrong at the time of the charged offenses. He did not claim that the Defendant was incompetent to proceed to trial. A hearing on the Defendant's motion to amend his plea was set for November 15, 2000. The minute entry for that date simply reads, "Motion to amend plea-moot.". The record does not reveal any further reference to an insanity defense prior to or during trial.
On the date of the sentencing hearing, January 31, 2001, defense counsel filed a motion to continue the sentencing, asking that the Defendant be given time for an examination by a psychiatrist to be hired by his parents. The motion was denied and the Defendant's original sentence was imposed that day. At the time of sentencing, defense counsel asked the trial judge to consider the Defendant's psychiatric problems as a mitigating factor. The trial judge responded that the defense had shown no such evidence of such problems at trial, although it had been given the opportunity to do so.
The trial judge stated:
I want the record to be very clear. I'm [sic] heard references to psychiatric matters. This Court delayed these proceedings at the request of the Defendant and also authorized a private examination and authorized public funds to pay for that examination relative to any issues of mental deficiencies. The Court upon moving this matter forward was told by Counsel that he had not obtained those and that he was ready for trial and it was upon that basis that we proceeded. Very clearly we authorized sufficient funds and allowed time for that to happen.
There is no documentation in the record as to what steps, if any, defense counsel actually took to secure a psychiatric evaluation for the Defendant. Also, there is no explanation as to why the defense motion to change the plea was declared to be moot. Thus, as the record does not provide this Court with sufficient evidence to decide this issue, the claim for ineffective assistance of counsel must be addressed through application for post-conviction relief, so as to afford the parties an adequate record for review.
In his next assignment of error, the Defendant contends that his sentence is excessive because the trial judge ordered the sentences on the three counts to be served consecutively. He contends that two of the three counts arose from the same incident, therefore, there is a presumption in favor of concurrent sentences under La.C.Cr.P. art. 883. He further argues that the trial court did not provide sufficient justification for imposing consecutive sentences in his case.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Lefeure, 00-1142 (La.App. 5th Cir.1/30/01), 778 So.2d 744, 755. In reviewing a sentence for excessiveness, the court of appeal must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. Lefeure, 778 So.2d at 755.
La.C.Cr.P. art. 883 provides:

*1070 If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
The acts at issue were clearly part of the same course of conduct. As the victims in counts two and three were robbed at the same time at the First American Bank, there was a presumption in favor of concurrent sentences as to those counts. However, a trial judge retains discretion to impose consecutive sentences on the basis of factors such as the offender's past criminal acts, the violent nature of the charged offenses, or the risk that the defendant may pose to the safety of the community. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49; Lefeure, 778 So.2d at 755. If the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary. Lefeure, 778 So.2d at 755.
At the time of the original sentencing, the judge commented that the Defendant had shown no remorse for his conduct and that he had used threats of violence in the commission of the instant offenses.[6] He also noted that the law did not allow him to suspend the Defendant's sentences, but that he would not in any case have done so. The judge stated:
[T]his Defendant is in need of institutional care which can be best provided under the custody of the State of Louisiana. That there is a risk that during the period of any suspended sentence... this Defendant would commit additional crimes. Any lessor [sic] sentence than which the Court will impose would deprecate the seriousness of these offenses.
The Defendant argues that there is no basis in the record for the trial court's assertion that he showed no remorse and that there was no testimony that he threatened violence against the victims while committing the instant offenses.
A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
In this case, the Defendant neither verbally threatened, nor physically harmed the victims. However, his actions in implying he had a gun in each robbery was interpreted as a threat by the bank tellers and the customer who witnessed one of the robberies. Moreover, first degree robbery is listed as a crime of violence under La. R.S. 14:2(13). As for the Defendant's lack of remorse, the trial judge was able to observe the Defendant throughout the proceedings and had ample opportunity to form an opinion based on his demeanor. Based on the foregoing, we find that the trial judge did not abuse his discretion in imposing consecutive sentences.
*1071 We have reviewed the record for error patent pursuant to La.C.Cr.P. art. 920 and find none requiring action.
Accordingly, the Defendant's convictions and sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] Defendant was initially charged on June 26, 1996 with five counts of armed robbery. He pled guilty and was sentenced to 30 years imprisonment at hard labor on each count concurrently. He later filed a motion to withdraw his guilty pleas based on ineffective counsel and that the pleas were not made knowingly and voluntary. The motion was denied by the trial judge and the denial was affirmed on appeal. The Louisiana Supreme Court granted writs and remanded to the trial court for an evidentiary hearing and to afford the Defendant an opportunity to withdraw the pleas. State ex rel. Aleman v. State, 99-0488 (La.10/1/99), 745 So.2d 601 and State ex rel. Aleman v. State, 99-1180 (La.10/1/99), 745 So.2d 602. After withdrawing the pleas, the State reduced the charges to first degree robbery. In January of 2001, the case went to trial on three of the five counts. The jury found the Defendant guilty of the three counts on January 11 and 12, 2001. On March of 2001, the State dismissed counts four and five.
[2] Defendant filed a pro se brief supplementing the brief filed by appeal counsel.
[3] Compare State v. Cook, 98-848 (La.App. 5th Cir.1/26/99), 729 So.2d 634, writ denied, 99-0570 (La.6/25/99), 745 So.2d 1185, a case involving convictions for attempted first degree robbery and first degree robbery. During one of the robberies, the defendant entered a bank and approached the victim, a teller, holding a piece of paper. When the victim tried to take the paper, defendant said, "B* *ch, don't act like you don't understand. You know what this is all about." Id., 729 So.2d at 636. There was no testimony from the victim or from other witnesses that they believed the defendant had a weapon.

On appeal the defendant argued that the evidence at trial did not show the victim believed he was armed with a dangerous weapon. This Court rejected the argument, finding that the victim's immediate compliance with the defendant's demands, and a witness's actions in setting off the bank's alarm were sufficient to support an inference that the victim believed the defendant had a dangerous weapon. Id., 729 So.2d at 639.
[4] On March 9, 2000, the State's Prieur motion was heard. Deputy George Giron and Regions Bank employees Leigh Kelly (Kelly) and Alice Cosenza (Cosenza) testified. The motion was denied.
[5] The record does not show that the Defendant requested a limiting instruction to the jury regarding this evidence. The court was therefore not required to give such instruction
[6] The court did not give reasons for sentencing at the habitual offender proceedings.